UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Ziyad Selimovic, ) | |
| ) | |
| Plaintiff, ) | Case No.: 20-cv-7765 |
| ) | |
| v. ) | |
| ) | |
| Comcast of Illinois I, Inc., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S COMBINED MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY JUDICIAL PROCEEDINGS AND MEMORANDUM OF LAW IN SUPPORT**

Defendant Comcast Cable Communications Management, LLC (incorrectly identified in Plaintiff's Complaint as "Comcast of Illinois I, Inc.") ("Comcast" or "Defendant"), by and through its attorneys, respectfully moves this Court pursuant to 9 U.S.C., §§ 3, 4, for an order compelling arbitration for all claims in Plaintiff Ziyad Selimovic's ("Plaintiff") Complaint and dismissing with prejudice Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1); or, in the alternative, staying the underlying proceedings pending the outcome of the arbitration.

**Preliminary Statement**

Plaintiff enrolled in an alternative dispute resolution program with Comcast. The alternative dispute resolution program included a mandatory arbitration agreement. Although Plaintiff was aware of the agreement and his obligation to arbitrate his claims, Plaintiff filed the instant Complaint against Comcast. There is no justification for Plaintiff's attempt to circumvent the binding agreement to arbitrate. The agreement to arbitrate and the Federal Arbitration Act ("FAA") mandate that Plaintiff's claims be heard exclusively in an arbitration forum. Therefore, Comcast respectfully requests that this Court grant its motion to: (i) compel arbitration for all claims asserted in Plaintiff's Complaint against Comcast pursuant to 9 U.S.C. §§ 3, 4, and (ii)

1

dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1); or, in the alternative, stay the underlying proceedings pending the outcome of the arbitration.

## Statement of Facts

Plaintiff is a former employee of Comcast. Dkt. 1, ¶¶ 6, 9. In December 2013, Comcast implemented an alternative dispute resolution program, Comcast Solutions, in the Chicago region. *See* December 2, 2013 Correspondence, attached as Exhibit A; *see also* Comcast Solutions Brochure, attached as Exhibit B. Comcast Solutions requires mandatory arbitration of employment-related disputes, including all "workplace legal disputes that would otherwise be heard in a court of law," such as "claims of back pay, commissions or failure to pay overtime, claims for discrimination based on race, gender, age, religion, disability or any other protected class, and claims of sexual or other types of unlawful harassment." Ex. B at p. 3.

If an employee did not want to participate in Comcast Solutions, the employee was required to complete a designated "Opt Out" form and return it to Comcast no later than January 7, 2014. *See* Ex. A; *see also* December 31, 2013 Email, attached as Exhibit C. If an employee did not submit a completed "Opt Out" form to Comcast, Comcast automatically enrolled the employee in Comcast Solutions. *Id.* The Comcast Solutions brochure further stated,

> To participate in the Comcast Solutions program, both you and the company waive the right to a civil action or a jury trial for any covered claims. You also waive the right to bring or participate in a class action or in a collective or representative action on covered legal claims, to the fullest extent permitted by law. All covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.

Ex. B at p. 8.

Comcast sent Plaintiff information regarding Comcast Solutions on December 2, 2013. Ex. A; *see also* Envelope Addressed to Plaintiff, attached as Exhibit D; *see also* Declaration of Lynn Collins, attached as Exhibit E.[1] Comcast requested that Plaintiff submit a completed "Opt Out" form by January 7, 2014 if he chose not to participate in Comcast Solutions. *Id*.; *see also* Ex. C.

On December 31, 2013, Comcast sent Plaintiff and other employees additional electronic correspondence regarding Comcast Solutions. *See* Ex. C. The December 31, 2013 email directed employees to a portal that contained additional information about Comcast Solutions and necessary forms, and reiterated that employees would be automatically enrolled in the program unless the employee opted out by completing an "Opt Out" form by January 7, 2014. *Id.* Ex. E, ¶¶ 10-11. Comcast did not receive any email or message stating that the December 31, 2013 email to Plaintiff's work email address was undeliverable. *See* Ex. E, ¶ 11. Even though he was aware of his ability to opt out of the agreement to arbitrate, Plaintiff never did so. Since 2014 and continuing through 2019, Plaintiff acknowledged that he received and understood Comcast Solutions. *See* Comcast Code of Conduct and Employee Acknowledgments, attached as Group Exhibit F.

On approximately December 29, 2020, Plaintiff filed his Complaint. *See* Dkt 1. In the Complaint, Plaintiff asserts that Comcast: (i) discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA") and (ii) retaliated against him in violation of the ADEA. *See* Dkt. 1, *generally*.[2]

---

[1] At the time Comcast sent Plaintiff information regarding Comcast Solutions on December 2, 2013, Plaintiff did not submit any documents or information to Comcast indicating that he resided at any address other than the address to which Comcast sent the Comcast Solutions materials. *See* Ex. E, ¶ 8.
[2] Comcast denies that it violated any federal, state or local law relating to Plaintiff and his employment with Comcast and further denies that he is entitled to any remedy or damages whatsoever.

Counsel for Comcast contacted Plaintiff's counsel to inquire as to whether Plaintiff would agree to arbitrate his claims in accordance with the parties' arbitration agreement. Plaintiff has not agreed to submit his claims to arbitration. Consequently, Defendant seeks an Order compelling Plaintiff to arbitrate his claims against Defendant pursuant to Comcast Solutions.

## Legal Standard

The FAA governs questions of arbitrability in both federal and state courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 131 S. Ct. 1740 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 214 (1983). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Therefore, the standard for compelling arbitration is low. *Conway v. Done Rite Recovery Services*, Case No. 14-cv-5182 (N.D. Ill. Apr. 30, 2015). Moreover, arbitration agreements in the employment context are broadly enforceable under the FAA. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Valuepart v. Faruhar*, Case No. 14-cv-3004 (N.D.Ill. Sept. 29, 2014).

To that end, courts in the Seventh Circuit have routinely enforced arbitration provisions, particularly with respect to ADEA causes of action. *See Tinder v. Pinkerton Sec., *305 F.3d 728, 736 (7th Cir. 2002) (holding that the plaintiff was bound to arbitrate her claims pursuant to an

arbitration agreement); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 673 (7th Cir. 1999) (same); *Scaffidi v. Fiserv Inc.*, Case No. 05 C 1046, 2006 WL 2038348, *1, *15 (E.D. Wis. 2006) (same); *Dalope v. United Health Care*, Case No. 03 C 8919, 2004 WL 2325688, *1, *6 (N.D. Ill. 2004); *Grzanecki v. Darden Restaurants*, 2020 WL 1888917, *5 (N.D. Ill. 2020) (compelling arbitration of ADEA claim, among others). As the Seventh Circuit explained, "We [have] found, as have most other circuits, that Congress did not intend to prohibit the use of pre-dispute arbitration agreements for the resolution of Title VII claims." *Michalski*, 177 F.3d at 635. Accordingly, a "district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." *Tinder*, 305 F.3d at 735; *see also Biermann v. Comcast Cable Communications Management, LLC*, 2020 WL 6870824, *3 (N.D. Ill. 2020) (compelling arbitration pursuant to Comcast Solutions).

## Argument

Upon being presented with a motion to compel arbitration and stay judicial proceedings, a court must make three determinations. First, the court must determine whether there is a valid written agreement to arbitrate in place. *Prima Paint Corp. v. Flod & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Second, the court must determine whether the dispute falls within the scope of the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Third, the court must determine if the plaintiff has refused to arbitrate those claims, so as to warrant an order compelling arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (*citing* 9 U.S.C. § 4). In this case, compelling arbitration is appropriate because there is a valid arbitration agreement and Plaintiff's Complaint falls within the scope of the arbitration agreement. Indeed, **this District** and many others have compelled arbitration in reliance upon the Comcast Solutions program. *See Biermann*, 2020 WL at *3 ("For

5

these reasons, the Court concludes that Comcast's mailing and e-mailing of the Comcast Solutions letter and brochure was a valid offer, and Biermann's silence following delivery of the letter and brochure (or, in the e-mail, the links to the brochure) constitutes acceptance."); *Azeveda v. Comcast Cable Communications Management, LLC*, 2019 WL 5102607 (N.D. Cal. 2019) (compelling arbitration pursuant to Comcast Solutions); *Price v. Comcast Cable Communications Management, LLC*, 2019 WL 3972821 (D.N.M. 2019) (same); *Garcia v. Comcast Cable Communications Management, LLC*, 2017 WL 1210044 (N.D. Cal. 2017) (same); *Lancaster v. Comcast Cable Communications Management, LLC*, 2017 WL 3616494 (E.D. Mich. 2017); *Smith v. Comcast Cable Communications Management, LLC*, 2016 WL 4480975 (S.D. Fla. 2016); *Whitehead v. Comcast Corporation*, 2016 WL 347345 (W.D. Tenn. 2016) (same).

### I. Plaintiff's Agreement To Arbitrate Is Valid And Binding.

In considering the enforceability of an arbitration agreement, courts must first determine whether the dispute is subject to arbitration pursuant to a valid arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Courts within the Seventh Circuit apply state contract law when determining whether there is a valid agreement to arbitrate. *See e.g., James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). Under Illinois law, a valid contract consists of an offer, an acceptance and consideration. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)); *see also Biermann*, 2020 WL at *3 (compelling arbitration as a result of Comcast Solutions).

### A. Comcast Offered Plaintiff The Option To Agree To Mandatory Arbitration.

Comcast has met its burden of showing that it offered Plaintiff the option to agree to mandatory arbitration. Under Illinois law, when an employer mails materials containing an

arbitration agreement and the method of acceptance to an employee, the employer has made a valid offer. *Pohlman v. NCR Corp.*, Case No. 12-6731 (N.D.Ill. July 17, 2013) (citing *Melena*, 219 Ill.2d at 151). In this case, Comcast mailed Plaintiff correspondence and a brochure introducing the Comcast Solutions program to his home address, on December 2, 2013. *See* Ex. A, B, D. The brochure described the binding arbitration process and specifically stated that employees would be automatically enrolled in Comcast Solutions unless they opted out by completing an "Opt Out" form and submitting it no later than January 7, 2014. *Id.* Comcast's mailing of the Comcast Solutions brochure and method of acceptance constituted an offer under Illinois law. *See Melena*, 219 Ill.2d at 151 (holding that mailing of the Dispute Resolution Program materials to its employees was Anheuser-Busch's "offer").

Further, on December 31, 2013, Comcast sent Plaintiff an e-mail regarding the Comcast Solutions program and reminding him that he would be enrolled in the program unless he opted out by January 7, 2014. *See* Ex. C. Comcast's electronic mailing of Comcast Solutions to Plaintiff's email address, similar to a mailing to his home address, also fulfilled its burden to make an offer under Illinois law. *See Melena,* 219 Ill.2d at 151 (holding that mailing of the Dispute Resolution Program materials to its employees was Anheuser-Busch's "offer").

### B. Plaintiff Agreed To Be Bound By Comcast's Arbitration Agreement.

On December 2, 2013, Comcast informed Plaintiff that if he decided to participate in Comcast Solutions, he did not need to take any further action and that Comcast would automatically enroll him into the program. *See* Ex. A-B. Alternatively, if Plaintiff did not want to participate in Comcast Solutions, Comcast required him to complete a designated "Opt Out" form and return it to Comcast no later than January 7, 2014. *Id.* On December 31, 2013, Comcast reminded Plaintiff of his obligations to complete and submit an "Opt Out" form by January 7,

FP 39706103.2

2014, should he decide not to participate in Comcast Solutions. *See* Ex. C. Plaintiff never submitted an "Opt Out" form, and therefore, voluntarily agreed to participate in Comcast Solutions. The fact that Plaintiff declined the opportunity to opt out of the program after receiving information about Comcast Solutions evidences his acceptance of the terms of Comcast Solutions. Moreover, Plaintiff acknowledged on an annual basis that he received and understood Comcast Solutions. *See* Ex. F.

Additionally, it does not matter that Plaintiff never physically signed an arbitration agreement. The FAA does not require arbitration agreements to be signed, only written. *Pohlman*, Case No. 12-6731 at *5 (*citing* 9 U.S.C. §3); *Tinder*, 305 F.3d at 736 (7th Cir. 2002) (finding that § 3 of the FAA requires arbitration agreements to be written, but does not require them to be signed); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) (same). Moreover, opt-out programs such as the one utilized by Comcast have specifically been validated by courts in this District, as discussed immediately below. *See Biermann*, 2020 WL at *3.

In the *Biermann* matter and under virtually identical circumstances, this District compelled arbitration of an ADEA claim under Comcast Solutions. In *Biermann*, an Illinois employee filed a Complaint pursuant to the ADEA in the Northern District of Illinois. *See Biermann*, 2020 WL at *1. During the plaintiff's employment with Comcast, he received a letter notifying him of Comcast Solutions and his ability to opt out, received a subsequent e-mail reminding him of Comcast Solutions and his ability to opt out, and did not opt out of Comcast Solutions. *See Biermann*, 2020 WL at **1-2. The plaintiff's assertions that he purportedly was not aware of these materials and did not remember receiving them were insufficient, and the court compelled arbitration pursuant to Comcast Solutions. *See Biermann*, 2020 WL at *3 ("For these reasons, the Court concludes that Comcast's mailing and e-mailing of the Comcast Solutions letter and

8

brochure was a valid offer, and Biermann's silence following delivery of the letter and brochure (or, in the e-mail, the links to the brochure) constitutes acceptance."). The Court should therefore compel arbitration in this matter.

Similarly, *Brown v. Luxottica Retail North America, Inc.* presented the same factual background—*i.e.*, an employer moved to compel arbitration of a former employee's claims where the employee did not opt out of the company's arbitration process. *Brown v. Luxottica Retail North America, Inc.*, Case No. 09-7816 (N.D. Ill. Sept. 29, 2010). In *Brown*, the employer introduced a dispute resolution agreement to its employees, which stated, "Associates may opt out of the Dispute Resolution Agreement within 30 days of receipt of this agreement," and attached an opt-out form for employees to complete if desired. *Id.* Brown never opted out of the program and, consequently, the court held that a valid contract to arbitrate existed and ordered the dispute to arbitration. *Id.; see also Page v. Alliant Credit Union*, 2020 WL 2526488 *2 (N.D. Ill. 2020) ("Furthermore the conspicuous and unambiguous opt-out provision of the agreement and coupled with plaintiff's silence makes plaintiffs' [sic] silence constitute assent to the arbitration agreement."); *see also McNamara v. Samsung Telecommunications America, LLC*, Case No. 14 C 1676 (N.D.Ill. Nov. 3, 2014) (granting defendant's motion to compel arbitration after plaintiff failed to opt-out of arbitration program); *Michalski,* 177 F.3d at 634 (validating the underlying arbitration agreement and compelling arbitration after plaintiff failed to submit an opt-out form to the defendant); *Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040, at *4 (N.D. Ill. Dec. 7, 2007) ("Most importantly, Plaintiff had the unfettered right to opt out of the arbitration provision. These circumstances defeat a claim of procedural unconscionability.").

Plaintiff cannot avoid arbitration by asserting that he never read the materials. In *Tinder v. Pinkerton Security,* the Seventh Circuit held that the arbitration agreement between the plaintiff

9

and the employer was valid even though the plaintiff claimed not to have received the arbitration program brochure. *See Tinder*, 305 F.3d at 736; *see also Biermann*, 2020 WL at *3. The court weighed the plaintiff's bare denial against the employer's evidence that information regarding the arbitration agreement was sent and presumably received, and found that the arbitration agreement in question was valid. *Id.; see also Spivey v. Adaptive Marketing, LLC*, 660 F.Supp.2d 940 (S.D. Ill. 2009) (holding that mailing to the employee's accurate home address created a presumption of delivery); *Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993) (holding that a presumption of receipt exists where there is "proof of procedures followed in the regular course of operations which give rise to a strong inference that the [correspondence] was properly addressed and mailed"). Here, Comcast sent Plaintiff relevant materials regarding Comcast Solutions on December 2, 2013 and December 31, 2013. *See* Ex. A, C, D. Since 2014, Plaintiff annually acknowledged his awareness and understanding of Comcast Solutions. *See* Ex. F ("[T]he Comcast Solutions program is a mutually binding contract between me and Comcast and that my continued employment with Comcast is confirmation that I am bound by the terms of the Comcast Solutions Program."); *see also Price*, 2019 WL at *5 (relying in part on the plaintiff's acknowledgments, holding "[t]here is considerable evidence showing that Plaintiff was not only aware of Defendants' arbitration program, but also agreed to be bound by it."). Hence, Plaintiff cannot avoid arbitration by asserting that he never read the materials. Plaintiff voluntarily agreed and manifested his consent to be bound by the arbitration agreement and the terms of Comcast Solutions.

    **C.**    **Sufficient Consideration Exists.**

In order for a contract to be enforceable under Illinois law, there must be consideration. *Melena*, 847 N.E.2d at 109. Consideration is the bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance. *McInerney v. Charter Golf,*

*Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citing Restatement (Second) of Contracts § 71 (1981)). Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. *Steinberg*, 371 N.E.2d at 639. An employer's promise to be bound by the arbitration process itself serves as mutual consideration in the underlying arbitration agreement. *Michalski*, 177 F.3d at 636.

In the case at hand, the Comcast Solutions brochure states,

> To participate in the Comcast Solutions program, ***both you and the company*** waive the right to a civil action or a jury trial for any covered claims. You also waive the right to bring or participate in a class action or in a collective or representative action on covered legal claims, to the fullest extent permitted by law. All covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.

Ex. B at p. 8 (emphasis added). Comcast, therefore, was mutually bound to the arbitration process. Because both Plaintiff and Comcast waived their right to bring a civil action or have a jury trial for any covered legal claims, there is adequate mutual consideration in the underlying arbitration agreement. *Michalski*, 177 F.3d at 636 (an employer's promise to arbitrate in exchange for an employee's promise to do the same, constitutes sufficient consideration to support the arbitration agreement).

## II. Plaintiff's Claims Are Within The Scope Of The Arbitration Agreement.

Here, it is clear that Plaintiff's claims fall squarely within the scope of Comcast Solutions. Comcast Solutions states that it applies to "claims for back pay, commission or failure to pay overtime, claims for discrimination based on race, gender, age, religion, disability or any other protected class, and claims for sexual and other types of unlawful harassment." Ex. B at p. 3. In his Complaint, Plaintiff asserts that in connection with his former employment with Comcast,

11

Comcast subjected him to discrimination and retaliation in violation of the ADEA. Dkt. 1, *generally*. Accordingly, Plaintiff's claims clearly fall within the scope of Comcast Solutions.

### III. Comcast Solutions is Not Unconscionable.

To the extent that Plaintiff may argue that Comcast Solutions is unconscionable, such argument cannot be sustained.[3] Agreements to arbitrate may be invalidated only on grounds "generally applicable [to] contract defenses such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc.*, 517 U.S. at 687. Because Comcast Solutions is neither procedurally nor substantively unconscionable, Comcast Solutions must be enforced, Plaintiff must be compelled to arbitrate this dispute, and this action must be dismissed.

#### A. Comcast Solutions is Not Procedurally Unconscionable.

Nothing in this case suggests that Comcast Solutions was procedurally unconscionable. Procedural unconscionability "requires a court to consider the circumstances surrounding a transaction including the manner in which the contract was entered into, and whether each party had a reasonable opportunity to understand the terms of the contract." *Levey v. CitiMortgage, Inc.*, 2009 WL 2475222, *4 (N.D. Ill. 2009) (internal citations omitted). Unequal bargaining power alone, however, is insufficient to make an arbitration agreement an adhesion contract. *Williams v. Jo-Carroll Energy, Inc.*, 912 N.E.2d 310 (5th Dist. 2009).

Here, Plaintiff decided to continue working for Comcast after being provided with sufficient time and opportunity to review the terms of Comcast Solutions and after he chose not to opt out of Comcast Solutions. Indeed, the fact that Plaintiff was provided the opportunity to opt out of Comcast Solutions weighs heavily against a finding of procedural unconscionability. *See*

---

[3] Comcast anticipates that Plaintiff may argue that the Agreement is unconscionable and, therefore, briefly addresses Plaintiff's anticipated arguments herein. Comcast, however, reserves its rights to supplement or add to its position regarding unconscionability so as to further address any additional arguments that Plaintiff may make in opposition to this Motion.

*Biermann*, 2020 WL at *3 ("His contention that the Comcast Solutions program is procedurally unconscionable lacks merit."); *see also Pivoris v. TCF Financial Corp.*, 2007 WL 4355040, **4, 6 (N.D. Ill. 2007); *see also Moorman v. Charter Communications, LLC*, 2019 WL 1930116, **4-5 (W.D. Wis. 2019). Because there are no facts to support the argument that Comcast Solutions was procedurally unconscionable, it should be enforced and Plaintiff should be compelled to arbitrate this dispute.

### B. Comcast Solutions Is Not Substantively Unconscionable.

Similarly, Comcast Solutions was not substantively unconscionable. Substantive unconscionability "looks to the fairness of the term itself." *Montgomery v. Corinthian Colleges, Inc.*, 2011 WL 1118942, *5 (N.D. Ill. 2011). "Contract terms are substantively unconscionable when they are: (1) so one-sided as to be oppressive; (2) imbalanced in the rights and obligations they impose; and (3) when there is a significant cost-price disparity, which involves a comparison of the cost of bringing an arbitration proceeding versus the damages the plaintiff can expect to receive." *Id.*

None of the factors bearing upon substantive unconscionability are present here. Comcast Solutions does not limit any of Plaintiff's remedies by compelling arbitration; nor does it impose any unreasonable fees or payments on Plaintiff by compelling arbitration. There is no issue of unequal access to courts in that both Plaintiff and Comcast are equally bound in their obligations to arbitrate their disputes against the other. Ex. B. The terms of Comcast Solutions are not unreasonably or grossly favorable to one side or the other. Therefore, Comcast Solutions also is not substantively unconscionable and should be enforced.

**Conclusion**

Plaintiff agreed to submit any claims he might have against Comcast to binding arbitration. Plaintiff cannot now be allowed to circumvent his contractual obligation by filing a complaint in this Court. Consequently, Comcast respectfully requests that this Court grant its motion to compel arbitration and to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, to stay the underlying proceedings pending the completion of that arbitration.

Dated: February 4, 2021

Respectfully submitted,

*/s/ Joel W. Rice*
One of Defendant's Attorneys

Joel W. Rice
Franklin Z. Wolf
**FISHER & PHILLIPS LLP**
10 S. Wacker Drive, Suite 3450
Chicago, Illinois 60606
jrice@fisherphillips.com
fwolf@fisherphillips.com
Phone: (312) 346-8061
Fax: (312) 346-3179

Counsel for Defendant

## **CERTIFICATE OF SERVICE**

I, Joel W. Rice, HEREBY CERTIFY that on February 4, 2021, I electronically filed the foregoing **DEFENDANT'S COMBINED MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY JUDICIAL PROCEEDINGS AND MEMORANDUM OF LAW IN SUPPORT** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Michael T. Smith
10 N. Martingale Road, Suite 400
Schaumburg, Illinois 60173

Respectfully submitted,

*/s/ Joel W. Rice*
One of Defendant's Attorneys

Joel W. Rice
Franklin Z. Wolf
**FISHER & PHILLIPS LLP**
10 S. Wacker Drive, Suite 3450
Chicago, Illinois 60606
jrice@fisherphillips.com
fwolf@fisherphillips.com
Phone: (312) 346-8061
Fax: (312) 346-3179

Counsel for Defendant

FP 39706103.2